IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| JOE SANDOVAL, and all others similarly situated under 29 USC § 216(b), | § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | CASE NO. 7:20-cv-108 |
| | § | JURY DEMANDED |
| PRODUCTION FIRE & SAFETY, LLC, | § | Collective Action pursuant to |
| AMPRO WELL SERVICES, LLC, | § | 29 U.S.C. § 216(b) |
| JAMES A. LEDOUX, and | § | |
| GEORGE PRATT DOUCET, | § § | |
| *Defendants*. | § | |

**<u>PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Joe Sandoval ("Plaintiff" or "Sandoval"), bringing this collective action and lawsuit individually and an in behalf of all other similarly situated employees (the "FLSA Collective") against Defendants Production Fire & Safety, LLC, AmPro Well Services, LLC, James (Jimmy) A. Ledoux, and George Pratt Doucet (collectively referred to as "Defendants" or "AmPro" or the "company") for failing to pay Sandoval and the FLSA Collective all of their overtime pay as required by the Fair Labor Standards Act ("FLSA"), failing to maintain accurate records, and for retaliating against Sandoval individually by discharging him after he raised a complaint with AmPro that the company was committing FLSA violations. In support thereof, Plaintiff respectfully shows the Court as Follows:

**I.   INTRODUCTION**

1.   Plaintiff brings this collective action under 29 U.S.C. § 216(b) on behalf of himself individually and on behalf of the FLSA Collective to recover all unpaid overtime wages.

2. Defendants violated the FLSA 29 U.S.C. § 207(a)(1) by employing Sandoval and the FLSA Collective "for a workweek longer than forty hours [but refusing to compensate them] for [their] employment in excess of [forty] hours… at a rate not less than one and one-half times the regular rate at which [they are or were] employed."

3. Defendants also violated the FLSA by failing to maintain accurate time and pay records for Sandoval and the FLSA Collective as required by 29 U.S.C. § 211(c) and 29 C.F.R. pt. 516.

4. Lastly, Defendants violated the FLSA 29 U.S.C. § 215(a)(3) by retaliating against Sandoval individually by discharging him after he had raised multiple complaints with AmPro, where he complained that he was not being paid for all compensable time as required under the FLSA.

## II.   JURISDICTION & VENUE

5. The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because it arises under the FLSA, a federal statute.

6. Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' FLSA claims occurred in the Midland/Odessa Division of the Western District of Texas.

## III.   PARTIES

7. Joe Sandoval is an individual who resides in Midland County, Texas and who was employed by AmPro from October 2017 through March 2020.

8. Plaintiff brings this action individually and on behalf of those similarly situated pursuant to the FLSA pursuant to 29 U.S.C. § 216(b). The FLSA Collective consists of Defendants' current and former employees employed over the last three years who were

responsible for performing manual and technical labor to provide Defendants' products and services for customers at jobsites, whether they were referred to as safety techs, gaugers, or other job titles.

9. Production Fire & Safety, L.L.C. is a Foreign Limited Liability Company in existence and operating in the State of Texas. Upon information and belief, the members of Production Fire and Safety, L.L.C. are citizens of Texas and may be served with process by serving the company's registered agent: James A. Ledoux, at 64 Eton Green Circle, San Antonio, Texas 78257.

10. AmPro Well Services, LLC is a Texas Limited Liability Company. Upon information and belief, the members of AmPro Well Services, LLC are citizens of Texas and may be served with process by serving the company's registered agent: James A. Ledoux at 13313 Western Oak Dr., San Antonio, Texas 78023.

11. James A. Ledoux is the Chief Executive Officer of Production Fire & Safety, LLC. He is a citizen of Texas and may be served with process wherever he may be found.

12. George Pratt Doucet is the President of Production Fire & Safety, LLC. He is a citizen of Texas and may be served with process wherever he may be found.

13. Whenever it is alleged that Defendants committed any act or omission, it is meant that the companies' officers, directors, vice-principals, agents, servants or employees committed such act or omission and that, at the time such act or omission was committed, it was done with the full authorization, ratification or approval of AmPro or was done in the routine and normal course and scope of employment of the companies' officers, directors, vice-principals, agents, servants or employees.

## IV. FACTS

14. Defendants are an oilfield services company that provides fire and safety compliance services and numerous other well services.

15. Defendants have at least three office locations within the territorial jurisdiction of this Court: a) 136 Old San Antonio Road Suite 303 & 304 Boerne, Texas 78006; b) 4218 S. County Rd. 1410, Midland, Texas 79706; and c) 2101 Zanderson Ave., Jourdanton, Texas 78026.

16. Defendants employed Sandoval as a safety tech and/or gauger from approximately October 2017 until March 2020.

17. Defendants employed the FLSA Collective as safety techs and/or gaugers for various periods of time within the last three years.

18. During Sandoval's and the FLSA Collective's employment with Defendants, they were engaged in commerce or the production of goods for commerce.

19. During Sandoval's and the FLSA Collective's employment with Defendants, the company had employees engaged in commerce or in the production of goods for commerce.

20. During Sandoval's and the FLSA Collective's employment with Defendants, the company had employees handling, selling or otherwise working on goods or materials that had been moved in or produced for commerce by others.

21. During Sandoval's and the FLSA Collective's employment with Defendants, the company had an annual gross volume of sales made or business done of at least $500,000.

22. Defendants paid Sandoval and the FLSA Collective on an hourly basis and did not pay Sandoval or the FLSA Collective on a salary basis, as properly defined in 29 C.F.R. § 541.602.

23. During Sandoval's and the FLSA Collective's employment with Defendants, they regularly worked in excess of forty hours per week.

24. Defendants knew or reasonably should have known that Sandoval and the FLSA Collective worked in excess of forty hours per week.

25. Sandoval and the FLSA Collective are not exempt employees and Defendants correctly did not classify them as exempt employees.

26. James A. Ledoux, as the Chief Executive Officer Production Fire & Safety, LLC, and George Pratt Doucet, as President of Production Fire & Safety, LLC, have joint employer liability based on their exertion of operation and control over the company. The operational control they exerted and continue to exert includes making hiring and firing decisions, establishing pay rates, determining methods of payment and compensation policies and practices, and controlling/establishing company rules. Ledoux and Doucet additionally have responsibility for the specific FLSA violations at issue. Specifically, Ledoux and Doucet implemented and enforced: 1) the company's improper wage and overtime pay policies; 2) the failure to pay standard and overtime wages for all time worked by Sandoval and the FLSA Collective; 3) the failure to keep proper time records for the hours worked by Sandoval and the FLSA Collective during their employment; and 4) the FLSA retaliation against Sandoval individually.

**Unpaid overtime and failure to maintain true and accurate employee time records**

27. Defendants did not pay Sandoval and the FSLA Collective all their standard wages and *all* overtime worked "at a rate not less than one and one-half times the regular rate at which [they were] employed." 29 U.S.C. § 207(a)(1) (emphasis added). In other words, Defendants did not pay Sandoval and the FSLA Collective for all hours worked and paid Sandoval and the FSLA Collective at an overtime rate less than one and one-half times the regular rate at which he was employed in violation of the FLSA.

28.     First, Sandoval and the FLSA Collective were required to be on "standby" at all hours of every day of every week. "Standby," as understood by Defendants and all employees of the company, meant that employees could be called up at any time, day or night, and be required to report to a job. Sandoval and the FLSA Collective would be notified that they were on standby through text messages or phone calls from a supervisor/manager. After being placed on standby, Sandoval and the FLSA Collective were prevented from using this time effectively for their own purposes. Sandoval and the FLSA Collective were not compensated for this standby time.

29.     Further, while on standby, Sandoval and the FLSA Collective would be officially assigned to various jobs, requiring their immediate dispatch. Upon receiving the job and being dispatched to the jobsite, often times the company men for the oil company client would say they were not ready and Sandoval and the FLSA Collective would be pushed back, sometimes up to eight hours, waiting for approval from the company men to begin work. Sandoval and the FLSA Collective would regularly wait either at home, at the AmPro yard, or at the jobsite itself after already having been dispatched to a job. During these waiting periods that resulted from having been pushed back, Sandoval and the FLSA Collective were not compensated for their time spent waiting and could not do anything but wait for approval from the company men. Sandoval and the FLSA collective were completely prevented from using these times effectively for their own purposes, as they were expected to be on the jobsite the moment the company men were ready, without delay.

30.     Furthermore, Defendants also did not pay Sandoval and the FLSA Collective for travel time to and from the AmPro yard and the jobsite. Employees were regularly required to first report to the yard before reporting to the jobsite. However, Defendants would only pay Sandoval and the FLSA Collective for time spent at the actual jobsite, and would only compensate them for

time recorded at the jobsite based on GPS tracking data. Sandoval and the FLSA Collective often drove anywhere between thirty minutes to three hours from the AmPro yard to the jobsite without being compensated for this time spent driving.

31. Lastly, Defendants did not pay Sandoval and the FLSA Collective for after-hours phone calls, texts, and emails placed and received at all hours of the day and night. Defendants knew that Sandoval and the FLSA Collective would regularly spend upwards of seven to ten hours per week making phone calls and sending texts messages and emails for work purposes, but chose not to compensate Sandoval and the FLSA Collective for this time. The frequency of these phone calls and texts were extensive and not simply de minimis. Collectively, the regular phone calls, texts, and emails constituted significant amounts of work time for which Defendants did not compensate Sandoval and the FLSA Collective.

32. In an attempt to improperly support its position that Sandoval and the FLSA Collective should not be paid for certain work activities such as standby time, wait time (due to delay from company men who worked for the various oil companies), travel between AmPro yard and jobsite, and extensive after hours phone calls, texts, and emails, Defendants would modify Sandoval and the FLSA Collective's time sheets to not include reported work time that would otherwise be compensable under the FLSA. Accordingly, Defendants failed to maintain true and accurate time records of its employees in order to not pay them for all the time they worked.

**FLSA retaliation against Joe Sandoval**

33. Sandoval was involuntarily terminated from his job at the end of March 2020. In the months leading up to Sandoval's termination, Sandoval had made various complaints to AmPro management about not being compensated for time he had already worked for the company.

34. Upon information and belief, the first complaint occurred when Sandoval met with Oscar Flores (who is now AmPro's WTX Operations Manager), where Sandoval explained to Mr. Flores that the company needed to be compensating him for the time that he was on standby and for the times that he would be already to go for a job, and then pushed back by the company men with the oil company clients. When making his complaint, Mr. Flores simply said that "this is the oilfield and that's the way it works" and said that Sandoval would not be paid for standby time or wait time.

35. The next complaint occurred when Sandoval had a conversation with AmPro's Director of Operations, Julio Holguin, where Sandoval explained to Mr. Holguin that the company needed to compensate him for all the time spent calling in jobs and taking phone calls and sending/replying to text and emails at all hours of the night. Mr. Holguin said that he would talk to the "higherups" in the company, however, nothing ever became of it.

36. The last series of complaints occurred sometime during the month of March 2020, when Sandoval sent texts to AmPro's Billing Specialist, Debby Schneider, explaining all that had been going on regarding his compensation, specifically, all of the time he had worked, the unauthorized modification of his time sheets, and the insufficient overtime pay for hours he had worked. Sandoval continued to send texts to Ms. Schneider over the course of three to four days, keeping her informed about all Defendants' FLSA violations. Ms. Schneider would respond to these texts by thanking Sandoval for informing her and that she would relay the information to the owners of the company. In addition to texting Ms. Schneider, Sandoval had also sent a WhatsApp group text to multiple people in the company informing them of the FLSA violations the Defendants were knowingly committing.

37. After Sandoval had begun exchanging texts with Ms. Schneider about Defendants' FLSA violations, Sandoval was sent on a job together with a female AmPro employee from San Antonio. While on location at the jobsite, it was required that this female AmPro employee back up a trailer into a small space. For reasons unknown, she refused to back up the trailer. With time being of the essence, and the company men demanding that the trailer be moved, Sandoval backed up the AmPro trailer about ten feet into the requested space.

38. The next day, Sandoval was informed that he was being terminated for operating a vehicle without the company's authorization and was shown a picture that was taken of him in the driver's seat of the truck while he was backing the trailer up.

39. The reason given for Sandoval's termination was a pretext for Defendants' FLSA retaliation. Defendants did not like that Sandoval had been voicing concerns and making complaints about the company's past and ongoing FLSA violations and Defendants needed a way to silence him. Accordingly, Defendants dispatched Sandoval to a jobsite with an incapable co-worker, constructively forcing him to perform certain tasks that he was not authorized to perform, and then took a picture of him doing it. In reality, Sandoval's termination was an orchestrated scheme whereby Defendants believed they could fabricate a legitimate reason to terminate Sandoval without it appearing related to the multiple FLSA violation complaints that Sandoval previously made.

## V.   CLAIMS FOR RELIEF

**Class and Collective Action Allegations**

40. Sandoval and the FLSA Collective incorporate by reference paragraphs 1-39 as set forth above.

41. As described above, Sandoval and the FLSA Collective members have been victimized by Defendants' pattern, practice, and/or policy, which is in willful violation of the FLSA.

42. Many members of the FLSA Collective worked alongside Sandoval and reported that they were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA.

43. Many members of the FLSA Collective, regardless of the division or job title in which they worked, performed similar job duties as Sandoval.

44. Thus, Defendants imposed a uniform practice or policy on Sandoval and the FLSA Collective regardless of any individualized factors.

45. Sandoval and the FLSA Collective regularly worked in excess of forty (40) hours per week and were not fully compensated for their standard wages and overtime wages.

46. As described above, the members of the FLSA Collective are similarly situated to Sandoval in terms of relevant job duties, pay provisions, and employment practices.

47. Defendants' failure to fully pay standard wages and overtime wages at the rate required by the FLSA, results from generally applicable, systematic policy and/or practices which are not dependent on the personal circumstances of any member of the FLSA Collective.

48. Sandoval's experience is typical of the experiences of all FLSA Collective members.

49. Sandoval has no interests contrary to, or in conflict with, the members of the FLSA collective. Like each member of the proposed FLSA Collective, Sandoval has an interest in obtaining the unpaid overtime wages owed under Federal law.

50. A class and collective action, such as the instant one, is superior to the other available means for fair and effective adjudication of the lawsuit.

51. Absent this action, many FLSA Collective members likely will not obtain redress of their injuries and Defendants will reap the unjust benefits of violating the FLSA.

52. Furthermore, even if some of the FLSA Collective members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

53. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

54. The questions of law and fact common to each of the FLSA Collective members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether Defendants employed the FLSA Collective members within the meaning of the FLSA;

   b. Whether Defendants failed to maintain accurate records within the meaning of the FLSA; and

   c. Whether Defendants' decision to not fully pay the FLSA Collective for all their standard wages and overtime wages was willful.

55. Sandoval's claims are typical of the FLSA Collective members' claims. Sandoval and the FLSA Collective members have sustained damages arising out of Defendants' illegal and uniform employment policies.

56. Sandoval knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

57.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

**Count 1 – Failure to Pay Overtime in Violation of 29 U.S.C. § 207(a)**

58.     Sandoval and the FLSA Collective incorporate by reference paragraphs 1-57 as set forth above.

59.     During Sandoval and the FLSA Collective's employment with Defendants, they were nonexempt employees.

60.     As nonexempt employees, Defendants were legally obligated to pay Sandoval and the FLSA Collective "at a rate not less than one and one-half times the regular rate at which they [were] employed[]" for all the hours they worked in excess of forty in a workweek. 29 U.S.C. § 207(a)(1).

61.     Defendants did not pay Sandoval and the FLSA Collective overtime "at a rate not less than one and one-half times the regular rate at which they [were] employed." 29 U.S.C. § 207(a)(1).

62.     In other words, Defendants paid Sandoval and the FLSA Collective for their overtime at a rate less than one and one-half times the regular rate at which they were employed in violation of the FLSA.

63.     Defendants had reason to know that they were not paying Sandoval and the FLSA collective in accordance with the FLSA. Defendants showed a reckless disregard for whether its pay practices violated the overtime requirements of the FLSA. In other words, Defendants willfully violated the overtime requirements of the FLSA, in spite of multiple complaints from Sandoval.

**Count 2 – Failure to Maintain Accurate Records in Violation of 29 U.S.C. § 211(c)**

64.     Sandoval and the FLSA Collective incorporate by reference paragraphs 1-63 as set forth above.

65.     The FLSA requires employers to keep accurate records of hours worked and wages paid to nonexempt employees. 29 U.S.C. § 211(c); 29 C.F.R. pt. 516.

66.     Defendants failed to keep true and accurate records of hours worked by failing to record time that was in fact worked by Sandoval and the FLSA Collective.

67.     Specifically, employees were instructed to submit time tickets that were not representative of compensable time worked. Defendants also modified employees time records to only represent the time that Sandoval and the FLSA Collective were on the job site, and did not include compensable time from when they were put on standby, pushed back by the company men of the oil company clients, driving from the AmPro yard to the jobsite, and performing other required non de minimis work activities that did not take place at a specific job site.

68.     Defendants knew that their time records did not reflect actual compensable time worked by Sandoval and the FLSA Collective, however, Defendants chose to not comply with FLSA record keeping requirements.

**Count 3 – Retaliation against Sandoval in Violation of 29 U.S.C. § 215(a)(3)**

69.     Sandoval and the FLSA Collective incorporate by reference paragraphs 1-68 as set forth above.

70.     Sandoval engaged in a federally protected activity by making multiple verbal and written (text message) complaints to Defendants whereby he informed them that they were violating the FLSA by not paying him for compensable time worked for when he was put on standby, pushed back by the company men, drove from the AmPro yard to the jobsite, and

performed other required non de minimis work activities that did not take place on a specific job site.

71. Upon making these complaints, to the appropriate AmPro managers and employees, he was involuntarily terminated shortly thereafter for illegitimate reasons as fully explained above.

72. The actual reason for Sandoval's termination was because of his repeated complaints to Defendants about not being paid for compensable time worked as required by the FLSA. Further, the reasons Defendants provided for Sandoval's termination were pretextual and calculated to make it appear as though they had terminated Sandoval for other legitimate reasons.

## VI. UNPAID WAGES AND DAMAGES

73. All Defendants, including individual defendants Ledoux and Doucet, are joint and severally liable as employers as defined under the FLSA 29 U.S.C. § 203(d). Accordingly, Sandoval and the FLSA Collective seek damages from all Defendants for the following unpaid wages and damages:

    a. Payment for all unpaid back wages, both standard and overtime, resulting from compensable time worked but for which no pay or inadequate pay was received over the past three years as a result of Defendants' willful violations of the FLSA and as permitted under the FLSA 29 U.S.C. § 255(a);

    b. Liquidated damages equal to the amount of unpaid back wages;

    c. Punitive damages for the willful and reckless failure to keep accurate time records;

    d.    Punitive damages for the retaliatory actions taken against Sandoval individually; and

    e.    Emotional distress damages suffered by Sandoval individually as a result of the retaliatory termination of his employment, specifically, the resulting familial discord, sleeplessness, stress, and the anxiety of finding a new job during the COVID-19 pandemic.

## VII.  ATTORNEY'S FEES AND COSTS

74.  As a result of Defendants' conduct, Sandoval and the FLSA Collective have retained the undersigned counsel to prosecute their claims. Sandoval and the FLSA Collective seek to recover their attorney's fees, expert witness fees, and any costs incurred from bringing this action under 29 U.S.C. § 216(b).

## VIII.  JURY DEMAND

75.  Sandoval and the FLSA Collective demand a trial by jury on all issues of fact and damages in this action.

## IV.  PRAYER

76.  For these reasons, Sandoval and the FLSA Collective respectfully pray that Defendants be cited to appear and answer, and that on final hearing, the Court enter Judgment against Defendants for the following costs, fees, and damages:

    a.    Unpaid back pay of both standard and overtime wages going back three years;

    b.    liquidated damages;

    c.    punitive damages;

    d.    emotional distress damages;

e.  costs of this action, including the fees and costs of experts and reasonable attorneys' fees;

f.  pre-judgment and post-judgment interest at the maximum rate allowed by law; and

g.  such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: */s/ Fernando M. Bustos*
   Fernando M. Bustos; SBN: 24001819
   fbustos@bustoslawfirm.com
   Brandon C. Callahan; SBN: 24096175
   bcallahan@bustoslawfirm.com
   Matthew N. Zimmerman; SBN: 24100386
   mzimmerman@butsoslawfirm.com
BUSTOS LAW FIRM, P.C.
P.O. Box 1980
Lubbock, Texas 79408-1980
(806) 780-3976
(806) 780-3800 FAX

ATTORNEYS FOR PLAINTIFF SANDOVAL
AND THE FLSA COLLECTIVE